UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRACEY THORNTON, o.b.o.      )
M.T., a minor,               )   No. CV-06-195-CI
                             )
          Plaintiff,         )   ORDER DENYING PLAINTIFF'S
                             )   MOTION FOR SUMMARY JUDGMENT
v.                           )   AND DIRECTING ENTRY OF
                             )   JUDGMENT FOR DEFENDANT
MICHAEL J. ASTRUE,           )
Commissioner of Social       )
Security,[1]                 )
                             )
          Defendant.         )

      BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 12, 15), submitted for disposition without oral argument on
January 16, 2007.  Attorney Maureen J. Rosette represents Plaintiff;
Special  Assistant  United  States  Attorney  Johanna  Vanderlee
represents Defendant.  The parties have consented to proceed before
a  magistrate  judge.  (Ct.  Rec.  7.)   After  reviewing  the
administrative record and the briefs filed by the parties, the court

      [1]  As  of  February  12,  2007,  Michael  J.  Astrue  became
Commissioner  of  Social  Security.   Pursuant  to  FED. R. CIV. P.
25(d)(1), Commissioner Michael J. Astrue should be substituted as
Defendant, and this lawsuit proceeds without further action by the
parties.  42 U.S.C. § 405(g).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

**DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff protectively filed for Supplemental Security Income (SSI) benefits on behalf of the minor child on November 27, 2002, alleging disability due to a seizure disorder (epilepsy). (Tr. 94, 103.)  Benefits were denied initially and on reconsideration; an administrative hearing was held before Administrative Law Judge (ALJ) Richard Hines, who denied benefits on February 4, 2005. (Tr. 13-23.)  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7).  This appeal followed.  The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

### SEQUENTIAL EVALUATION

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 105, which amended 42 U.S.C. § 1382c(a)(3).  Under this law, a child under the age of eighteen is considered disabled for the purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

The regulations provide a three-step process in determining whether a child is disabled.  First, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(a).  If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two.  Step two requires

the ALJ to determine whether the child's impairment or combination of impairments is severe. Id. The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c) If, however, there is a finding of severe impairment, the analysis proceeds to the final step which requires the ALJ to determine whether the impairment or combination of impairments "meet, medically equal or functionally equal" the severity of a set of criteria for an impairment in the listings. 20 C.F.R. § 416.924(d).

The regulations provide that an impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). To determine functional equivalence, the following six domains, or broad areas of functioning, are utilized: acquiring and using information; "attending and completing tasks"; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a. Limitations in functioning must result from the child's medically determinable impairments. 20 C.F.R. § 416.924a.

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 3

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the

Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ADMINISTRATIVE DECISION

ALJ Hines found the child was 15 years old, born May 31, 1989. (Tr. 22.) He concluded the minor child had not engaged in substantial gainful activity. (Tr. 23.) He found the child had the severe impairment of epilepsy, with pervasive development disorder and attention deficit disorder also indicated. The child also had had heel-cord elongation surgery. The ALJ found the severity of the impairments did not meet or medically equal the Childhood Impairment Listings. (Id.) The subjective complaints on behalf of the child were considered only to the extent they were supported by the evidence of record summarized in the ALJ's decision. The ALJ found the child's impairments "pose 'less than marked' limitations in the functional domains of acquiring and using information, attending to and completing tasks, interacting and relating to others, and health and physical well-being; and 'no' limitations in moving about and manipulating objects and caring for oneself." (Id.) The child was found not to have an "extreme" limitation in any domain of function, or "marked" limitations in any two domains. The ALJ further found the child did not "functionally" equal any of the Listings. (Id.) Thus, the ALJ concluded the minor child was not disabled.

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when: (1) he relied on the opinions of a non-examining physician; (2) improperly rejected the treating

psychologist's opinions; and (3) disregarded the testimony of Plaintiff's mother. (Ct. Rec. 13 at 6, 9.)

**ANALYSIS**

A.   <u>Medical Expert Testimony</u>

Before making a determination whether a child is disabled within the meaning of the Social Security Act, an ALJ must obtain a case evaluation by a pediatrician or other appropriate specialist who considers the record in its entirety. 42 U.S.C. 1382c(a)(3)(I); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003). The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Six reviewing and testifying physicians and psychologists reviewed and evaluated Plaintiff's records in the course of disability proceedings and concluded Plaintiff did not meet or equal the Listings. Among the records reviewed was a psychological report by examining psychologist R. Thomas McKnight, dated March 17, 2003, (Tr. 284-88); records from Spokane Public School District No. 81 (Tr. 164-235); clinical notes from treating physician, Timothy Crum, M.D., (Tr. 238-65); treating neurologist Timothy Powell, M.D. (Tr. 301-24); and treating psychologist John Kiernan, Ph.D. (Tr. 325-53).

Dr. McKnight observed Plaintiff had a "mild articulation

problem but this was not a barrier to communication." (Tr. 286.)
He noted Plaintiff was sullen initially, but was cooperative and
"rather personable" during the evaluation. He found Plaintiff's
upper level cognitive processes were generally intact, his memory
and fund of knowledge were adequate and the mental status
examination was within normal limits. (Tr. 287.) Using pre-2001
assessment domains, Dr. McKnight concluded, Plaintiff had no
limitation in motor skills, a "less than marked" limitation in
cognitive/communication skills, personal development and
concentration, persistence and pace. He found Plaintiff's social
skills appeared adequately developed, but because of his age, a
protective payee was recommended if benefits were awarded. A
reading disorder was diagnosed, based on report. (Tr. 288.)

Records from treating physician Dr. Crum indicate Plaintiff had
heel cord elongation surgery in January 2002. (Tr. 246.) His first
major seizure occurred on November 8, 2002, when he was getting on
the school bus and fell, hitting his head on the steps. (Tr. 247.)
The Holy Family Hospital ER report states he then had a grand mal
seizure that lasted one minute. (Tr. 266.) A CT scan at the
hospital was normal. (Tr. 253.) Plaintiff was seen at Holy Family
Hospital ER again on November 11, 2002, after he had a second
seizure at his grandmother's house that reportedly lasted 15
minutes. Plaintiff was started on valproic acid. (Tr. 271-72.)
Plaintiff reported a "stress attack," described as "twitching"
without loss of consciousness to ER physician C. Tullis on November
20, 2002. Dr. Tullis suspected a pseudo-seizure, administered a
saline solution, and Plaintiff's condition quickly resolved. (Tr.
275-76.) Dr. Crum assessed a seizure disorder in December 2002, and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

referred Plaintiff to Dr. Powell, neurologist. (Tr. 261.) Plaintiff was seen again at ER for twitching, but no seizure, on January 2, 2003; the ER physician, who diagnosed "spasms," noted a normal physical and mental status exam. (Tr. 281.) An MRI of the brain was mildly abnormal, suggesting "the presence of a physiologic disturbance arising from the mid to anterior portion of the left cerebral hemisphere," possibly associated with seizures of the focal origin. (Tr. 259.)

In January 2003, Plaintiff saw neurology specialist, Dr. Powell, who assessed "presumed seizure disorder," "epilepsy of unknown type." He noted details of the seizures were lacking. At that time, Plaintiff was being treated with Depakote. (Tr. 303.) In June 2003, Dr. Powell reported there had been no convulsive seizures since February 2003, when Plaintiff apparently failed to take his Depakoke. Plaintiff's mother reported less intense seizures two times a week, lasting two to five minutes (Tr. 304, 307.) By September 2003, Dr. Powell reported Plaintiff's epilepsy was controlled with medication, but Plaintiff may experience mild seizures if he forgets his pills. (Tr. 310.) In September 2003, Dr. Powell noted the mother's report of stress-related events that "she feels are nonepileptic and not truly clinical seizures." (Id.) Plaintiff saw Dr. Powell again in March 2004. Plaintiff was on Depakote and reported dizziness; no seizures were reported. (Tr. 321.) In April 2004, Plaintiff went to urgent care for dizziness, admitted stress but would not discuss the source. (Tr. 322.)

Spokane Public School records (2001-2003) document a history of lack of interest in school and poor attendance. In 2001, school officials reported no significant delay in his language skills.

(Tr. 127.)  In 2003, his special education teacher reported that although Plaintiff had problems completing homework and attending class, he had the potential to learn, but he refused to do the work. (Tr. 158.)  The school generally recommended integration into the regular classroom; however, in middle school, he was moved to a smaller class to address the motivation issues.  (Tr. 157.)  Results of the WAIS for Children showed an IQ of 86 (low end of the average range).  (Tr. 229.)  November 2003 school records report that Children's Hospital in Seattle, Washington, had ruled out attention deficit disorder and suggested Michael's primary disability was dyslexia.  (Tr. 230.)  At this time, it was determined by the school district that Michael was not eligible for special education programs; his category was identified as Specific Learning Disability, with learning disabilities and avoidance behaviors identified as the primary reason for his lack of success.  (Id.) In 2004, the child transferred from Rogers High School to an alternative school.  (Tr. 347.)  School officials reported he had no problems with personal care, but often went home due to health problems, causing excessive absenteeism.  (Tr. 158-60.)

In April 2003, agency physicians Channing Bowen, M.D., and Jerry Gardner, Ph.D., reviewed Plaintiff's records, and determined Plaintiff had a seizure disorder, specific learning disorder and heel cord release that were severe impairments, but did not meet or medically or functionally meet the Listings.  They found functional limitations were "less than marked" in all domains.  (Tr. 289-94.) Charles Wolfe, M.D., and Edward Beaty, Ph.D., confirmed this assessment in May 2003.  (Tr. 295-300.)

John Kiernan, Ph.D., counseled Plaintiff intermittently from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 9

October 2001 to June 2003, and once in January and in February 2004. (Tr. 325-50.)  Sessions often included Plaintiff's mother and other family members.  Dr. Kiernan diagnosed Pervasive Developmental Disorder, NOS(PDD) (mild with learning concerns)[2] in June 2003.  (Tr. 345.)  At that time, he observed Plaintiff was stable on Depakote, with a reported minor seizure or two, one in his sleep.  Dr. Kiernan reported Plaintiff "actually seems to be doing generally well with regards to overall mood stability," but issues remained at home around following rules and motivation at school.  (Tr. 345-46.) The next report is dated January 2004, in which Dr. Kiernan had Plaintiff and his mother fill out questionnaires (Child Behavior Checklist and Child Depression Inventory).  No objective testing was administered.  Dr. Kiernan concluded from their responses that "[p]robably there is an adjustment reaction/depression here" from a combination of home and school factors, including telephone contact

---

[2] The condition of Pervasive Developmental Disorder is used:

> [W]hen there is a severe and pervasive impairment in several areas of development: reciprocal social interaction skills, communication skills, or the presence of stereotyped behavior, interests and activities.  The qualitative impairments that define these conditions [specifically, Autistic Disorder, Rett's Disorder, Childhood Disintegrative Disorder, Asperger's Disorder, Pervasive Developmental Disorder NOS] are distinctly deviant relative to the individual's developmental level or mental age. . . .  These disorders are usually evident in the first years of life and are often associated with some degree of Mental Retardation . . . ."

Pervasive Developmental Disorder, NOS is used to describe a condition where the criteria are not met for a specific PDD, Schizophrenia, Schizotypal Personality Disorder or Avoidant Personality Disorder. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV) at 65, 77-78 (1995).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 10

with his incarcerated father.  (Tr. 347.)  Clinical notes from February 2004 report "probable dysthymia," as well as Plaintiff's long-standing history of PDD, NOS.  Plaintiff had just been in a new school and missed two days of school, apparently due to sleeping in.  (Tr. 349.)

At the ALJ hearings, neuro-psychologist Allen Bostwick, Ph.D., and neurologist James Haynes, M.D., testified.  Both doctors had the benefit of reviewing the entire record (Tr. 36, 56) and testified Plaintiff's impairments did not meet or equal the Listings for child disability.  Dr. Haynes testified that Plaintiff's epilepsy was controlled by Depakote and medical records indicated a few months of small seizures twice a week that were resolved with medication.  (Tr. 57.)  An impairment controlled effectively by medication cannot be the basis for a disability finding.  *Warre v. Commissioner of the Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Dr. Bostwick testified that attention deficit disorders had been ruled out by Children's Hospital, and although Plaintiff demonstrated problems completing tasks at school, the record showed improvement in this area.  (Tr. 37-39.)  Dr. Bostwick noted Plaintiff's ability to complete tasks appeared to be "marked," but other functional limitations discussed by both experts were found "less than marked."  (37-40, 58-60.)  As discussed above, school and medical reports support the medical experts' opinions by substantial evidence.

B.  Dr. Kiernan's Medical Opinion

Plaintiff argues the ALJ improperly disregarded his treating psychologist's opinions which, if credited, would support a disability finding.  (Ct. Rec. 13 at 8-9.)  In child disability proceedings, the purpose of having a case evaluation from a

qualified expert at hearing is to obtain an expert opinion that considers all reports in the record before determining whether the child is disabled within the meaning of the Social Security Act. *Howard ex rel. Wolff*, 341 F.3d at 1014. The record reflects the ALJ and Dr. Bostwick considered Dr. Kiernan's assessment and included it in their evaluation of the case. (Tr. 18, 36-37.)

Although a treating physician's opinion is given deference, the ALJ may reject the opinion in favor of conflicting opinions if the ALJ gives "specific, legitimate reasons" for doing so. To meet this burden, the ALJ can set "out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation" of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ is not required to accept the opinion of a treating or examining physician "if that opinion is brief, conclusory and inadequately supported" by clinical records. *Id.*

In August 2004, six months after his last documented session with Plaintiff, Dr. Kiernan completed an Individual Functional Assessment (IFA), indicating "marked" limitations in former domain categories of personal/behavioral development function and concentration, persistence and pace. (Tr. 351-53.) He checked "chronic illness" as a factor affecting Plaintiff's ability to function, with "epilepsy" as the cited supporting evidence. (Tr. 352.) In his one paragraph case summary, Dr. Kiernan stated Plaintiff's PDD, epilepsy, associated learning disability and occasional disorder of mood, mood disturbance and "gross motor impairment" had significant and persistent impact on his functioning. (Tr. 353.) As discussed above, Dr. Kiernan had

treated Plaintiff for psychological problems relating to family issues and school since 2001.  His contemporaneous notes do not reflect significant functioning impairments at home or at school due to psychological factors or the seizure disorder, and are, thus, inconsistent with the brief and unsupported findings in the IFA. Although Plaintiff was having attendance and motivation problems at school, Dr. Kiernan observed Plaintiff's seizure disorder was stabilized and Plaintiff was doing "generally well" with intermittent reports of depressed mood and familial stressors. (Tr. 245-46.)

The ALJ is not required to recite a specific incantation to reject Dr. Kiernan's findings.  Rather, this court may draw specific and legitimate inferences from the ALJ's opinion. *Magallanes,* 881 F.2d at 755.  The ALJ summarized Dr. Kiernan's case summary and noted conflicting evidence from school records that show "while the claimant does have some difficulties, they are not particularly severe or extreme."  (Tr. 18.)  It is proper to read the ALJ's discussion of Dr. Kiernan's own diagnosis of "mild" pervasive developmental disorder (Tr. 20, 345), the school records, agency evaluations and other treating and examining physician evidence, and draw inferences relevant to Dr. Kieran's conclusory findings and opinions in the IFA that conflict with his detailed clinical notes. Those portions of Dr. Kiernan's opinions substantially supported by the record were properly considered by the ALJ and incorporated into his findings.  The ALJ's summary and interpretation of the evidence and his findings support his determination that Plaintiff's impairments were not disabling. (Tr. 17.) *See Magallanes*, 881 F.2d at 751.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 13

C.   Ms. Thornton's Testimony

Plaintiff contends the ALJ disregarded testimony by his mother that support a finding that Plaintiff met the Listings for non-convulsive epilepsy. (Ct. Rec. 13 at 9-10.) Ms. Thornton testified at the August 2004 hearing that Plaintiff's small seizures were occurring once a week. (Tr. 43.) At the December 2004 hearing, she testified that he had small seizures that lasted two to four minutes, two to three time every other day, or two per week. (Tr. 62.)

The ALJ did not ignore this testimony. He found the medical evidence did not support the frequency of epilepsy seizures being alleged by the clamant's mother. He found her testimony was credible only to the extent supported by the record. (Tr. 20.) He also found her attempts to assert "chronic headaches," at hearing, were not supported or substantiated by the continuous treatment evidence of record. (Tr. 20.) Conflict with medical evidence is a specific, germane reason, supported by the record, for discounting Ms. Thornton's allegations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As noted above, Dr. Kiernan and Dr. Powell noted Plaintiff's seizure disorder was stable on medication. Dr. Powell reported in September 2003 that Plaintiff had had a mild seizure when he forgot his pills. (Tr. 310.) At that time, Ms. Thornton told Dr. Powell she thought the "small seizures" at home were stress related and non-epileptic. (Id.) Credibility determinations are the sole province of the ALJ. The reviewing court may not substitute its judgment for that of the ALJ where evidence rationally supports the ALJ's finding. *Sprague*, 812 F.2d at 1229-1230. The ALJ did not err in his consideration of Ms.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 14

1   Thornton's testimony.  Accordingly,

2        **IT IS ORDERED**:

3        1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is

4   **DENIED.**

5        2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is

6   **GRANTED.**

7        3.   The District Court Executive is directed to file this

8   Order and provide a copy to counsel for Plaintiff and Defendant.

9   The file shall be **CLOSED** and judgment entered for Defendant.

10       DATED February 21, 2007.

11

12              _____S/ CYNTHIA IMBROGNO_____
                UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 15